LOPES et al. v. LUCE et al.

(District Court, D. Massachusetts. December 11, 1897.)

Nos. 821–826.

WHALE FISHERIES—SHIPPING ARTICLES—PROFITS OF TRADE.

The printed shipping articles for a whaling voyage contained an interlineation providing that the officers and seamen were not to participate in any furs, skins, or bones "taken in the way of trade." It appeared that the owners intended to engage to a considerable extent in trading with the natives, but did not inform the seamen thereof. In the course of the voyage they were required to perform much extra work connected with the trading, and in the preparation and care of the skins, bone, etc., acquired thereby. *Held*, that they were entitled to compensation for this extra work, and, under the peculiar circumstances of the case, they were entitled to the same share in the profits of the trading as was given them by the shipping articles as their lays in the catch.

These were six libels filed by seamen of the whaling schooner Era against Thomas Luce and others to recover the value of their lays, and also compensation claimed by them as their share in the profits of trading ventures carried on during the voyage. These libels were consolidated and heard together.

Thomas F. Desmond and Thomas A. Codd, for libelants.

Carver & Blodgett, for respondents.

BROWN, District Judge. Upon the evidence of witnesses as to the value of the catch of the whaling schooner Era, there appears no reason to disturb the allowance of 28 cents a gallon for oil, and $3.50 a pound for bone. According to the decided preponderance of testimony, the price for the bone was fair, if not liberal, and an allowance of a greater quantity of oil than was actually contained in the vessel more than offset the difference that would result from the allowance of the price of 30 cents per gallon for the oil. From the testimony of intelligent witnesses upon both sides, it appears that the owners took no unfair advantage of the men, but estimated the value of the catch fairly, at a figure very close to the actual cash value. Under such circumstances, the settlement should stand, so far as the value of the catch is concerned.

Whether the men are entitled to an additional amount for a share in the trade is a more serious question. The shipping articles contain the following provision: "It is understood and agreed that the officers and seamen are not to participate in any furs, skins, or bone taken in the way of trade." This provision was a written interlineation in printed articles. The men deny that it was read to them or called to their attention. The testimony of the owners is that the men were told simply that they were to have no share in the trade, and that no explanation was given them as to the amount of trade contemplated. It appears in evidence that the trade with the natives was considered by the owners a considerable part of the venture; that the sum of $1,351.37 was invested in articles for barter, which an owner testified was "quite a sum for trading"; and that a portion only of the articles procured in trade sold for $2,039.02.

84 F.—30

It further appears that the men did considerable work upon the skins and other articles taken in trade, and were ordered to do so by the master, and were subjected to hardship in consequence. I find no satisfactory evidence of a custom of owners of whaling vessels to engage in trade to a similar extent, or to exclude the men from sharing in substantially all that results from the voyage. In The Holder Borden, 1 Spr. 144, 149, Fed. Cas. No. 6,600, it was said:

"We should keep in mind that this is a whaling voyage, in which the great principle of maritime policy, of uniting the interest of the mariners with that of the owner, is adopted in its greatest force."

This policy is applicable for the benefit of the seamen as well as of the owners. Even were the men informed that they were not to participate in the profits of trade, which they dispute, they had no reason to suppose that trade was an important object of the voyage, or that, through their labor, they were to assist the owners gratuitously in what was practically an independent venture. As at the time of the signing of the shipping articles the owners had in mind a trading enterprise of considerable importance, which, from the testimony, they regarded as "something of an experiment," and as the men were not informed of this intention, either actually or by any existing usage, I am of the opinion that the minds of the owners and of the men did not meet when the contract was signed. The articles should not be so construed as to permit the conversion of a voyage ostensibly for whaling into a voyage for the double object of whaling and trading. The evidence in this case, which tends to show the success of the trading experiment, and the probability of further and more important trading enterprises, affords a warning against a construction of the articles in question that would permit owners of whaling vessels to increase indefinitely the size of their trading ventures, and to secure without compensation, in a private business of freighting articles of barter to and from remote Northern regions, the services of men who visit these regions, and encounter peril and hardship, for the doubtful profits of a whaling catch. I find no evidence of an existing usage that would justify such a construction, and in the absence of evidence that all that was contemplated by the owners was communicated to the men, and undertaken by them voluntarily and with a full understanding, I consider such a construction of the stipulation as one derogatory of the seamen's general rights, and not to be supported by a court of admiralty. Matern v. Gibbs, 1 Spr. 159, Fed. Cas. No. 9,273; Brown v. Lull, 2 Sumn. 443, Fed. Cas. No. 2,018. As the libelants contributed to this collateral enterprise of the owners, not only in the transportation upon the vessel of the articles given and received in barter, but also by special labor expended in the work of trading, and in the preparation and care of the skins, bone, etc., I am of the opinion that they should receive compensation. The case should therefore be referred to a commissioner, to take an account of the fair market value at the time of the termination of the voyage of all articles received by the owners in trade, and, after deducting from the gross amount thereof such sums as shall be a fair allowance to the owners for their special

investment and special expenses in the trading venture, to report the balance, if any, in favor of the owners, as the amount of profit of said trade. Whatever rule of compensation might under other circumstances be adopted, I am of the opinion that under the present libels and proofs the libelants are entitled, respectively, to the same share in the profits of said trade as appear by the shipping articles to be their lays in the catch. A decree for the libelants may be entered in accordance with this opinion.